**In re BIGLARI IMPORT & EXPORT, INC. d/b/a the Ritz Oriental Rug Gallery, Debtor.**

**BIGLARI IMPORT & EXPORT, INC. d/b/a the Ritz Oriental Rug Gallery d/b/a the Orient Express and Khosrow Biglari, Plaintiffs,**

v.

**NATIONWIDE MUTUAL FIRE INS. CO. and Michelle Johnson, Defendants.**

Bankruptcy No. 90–52552–C.
Adv. No. 91–5185–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 17, 1992.

## DECISION ON DEFENDANTS' SECOND MOTION FOR REHEARING

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration Defendants' second motion for rehearing. Upon consideration thereof, the court finds and concludes as follows:

### BACKGROUND

This case suffers from a tortured procedural history. The debtor, as representative of the bankruptcy estate, initiated a lawsuit in state court against the above-named defendants. The defendants in turn attempted to remove the case to U.S. District Court pursuant to 28 U.S.C. § 1441, on grounds that the district court had di-

versity jurisdiction over the parties. The district clerk refused to accept the removal for filing, on grounds that, because the plaintiff was a debtor in bankruptcy, the only place the removal petition could be filed was in the bankruptcy clerk's office. This caused great consternation to the defendants, who knew that the bankruptcy clerk could only entertain a removal pursuant to 28 U.S.C. § 1452(a), a statute which they had no intention of invoking. Nonetheless, they complied, as the time was running on their right to file a removal.[1]

Once the matter was filed with the bankruptcy clerk, it was immediately set for status hearing before this court (per routine order of the bankruptcy courts of the Western District of Texas). In the meantime, the plaintiff filed a motion to remand to state court. After the parties explained the situation, this court initially ruled to remand the matter to state court. However, on motion for reconsideration by the defendants, this court vacated its remand order and instead "certified" a question to the district court regarding (1) whether there was subject matter jurisdiction to entertain removal under either § 1452 or § 1441 and (2) whether, notwithstanding jurisdiction to entertain removal under § 1452, the district court could independently entertain removal under § 1441.[2] The district court ruled that there was indeed subject matter jurisdiction under § 1334(b)[3] such that removal could be entertained under § 1452(a), but declined to

---

1. These events transpired prior to December 31, 1991, the effective date of new Rule 5 of the Federal Rules of Civil Procedure, which prevents district clerks from refusing to accept documents for filing for reasons such as this.

2. The district court was distressed at this "certified question" procedure, finding no statutory or rule authority to support its use. In the interest of judicial economy, however, the district court went ahead and ruled on the question presented, then referred the entire matter back to this court. This court also knows of no authorization for such a procedure, but was at the time reluctant to rule on whether the district court could or could not entertain removal under § 1441, it seeming to this court that was a question which the district court, not the bankruptcy court, should decide. The district court cautioned that it would not further entertain "certified questions" from the bankruptcy court

in the future, a position with which this court does not quarrel.

3. The district court quite correctly noted that even a cause of action *by* the estate against a third party not otherwise arising in or under the bankruptcy case is likely to fall within the "related to" jurisdiction of the district court, given the broad interpretation of that phrase adopted by the Fifth Circuit. 28 U.S.C. § 1334(b); *Matter of Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir.1988); *Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987) ("whether the proceeding could conceivably have any effect on the estate being administered in bankruptcy"). Said the district court,

The key word in this test is "conceivable"; certainty, or even likelihood, is not a requirement. *See In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 (3rd Cir.1991). The Seventh Circuit has also held that a dis-

visit the § 1441 question. It then referred the entire matter back to this court pursuant to § 157(a).

The defendants then again moved for reconsideration by this court, to be sure that they had clear marching orders on how to proceed. Among other things, they asked that the matter not be remanded to state court (as there is still a live motion for remand on the part of the plaintiffs). Instead, they want this court to transfer the case back to district court (evidently to effectuate what they had tried to accomplish with their original removal under § 1441), or if that is not possible, to retain and try the case.

## DISCUSSION

### I. *Transferring the case back to district court*

■ The bankruptcy court declines the movant's invitation to "refer or transfer" this matter to the district court, as there is no rule or statute which permits such a referral or transfer. The reference statute is a "one-way street" *from* the district court *to* the bankruptcy court. *See* 28 U.S.C. § 157(a). The district court, upon motion to that court or on its own motion, may *withdraw* this reference over this adversary proceeding, as it sees fit, 28 U.S.C. § 157(d), but the bankruptcy court has no statutory authority to send the case back

to the district court. Until such time as the district court elects to withdraw the reference (either on its own motion or on timely motion of a party), this court has no choice but to proceed with the case. Accordingly, the court now turns to the merits of the defendants' motion, which asks that this court not remand this case back to state court.

### II. *Retaining or remanding the case*

■ § 1452(b) permits this court to consider all of the equities in framing its decision whether to remand a given case. 28 U.S.C. § 1452(b). In this case, if the defendants should have been permitted to effectuate their original removal under the general removal statute, and through no fault of their own were prevented from doing so, that is an equitable consideration which ought to affect the decision whether to remand pursuant to § 1452(b).[4] Removal under the general removal statute would have assured the defendants that this matter would be heard in the district court rather than the bankruptcy court (unless, of course, the district court itself had decided to remand the case). By being forced into the bankruptcy court, the defendants have been deprived of their Article III forum and their jury trial rights may have been jeopardized as well.[5] This court must therefore, in deciding whether this case

pute is related to the bankruptcy when it affects the amount of property available for distribution to or the allocation among creditors. *See Pettibone Corp. v. Easley,* 935 F.2d 120, 122–23 (7th Cir.1991), *citing In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987).

*Biglari Import & Export, Inc. v. Nationwide Mutual Fire Ins. Co., et al.,* Civ. No. SA–92–CA–238, slip op. (W.D.Tex., April 23, 1992) (Garcia, D.J.). The court's ruling in this regard of course is consistent with *Marathon,* which did not hold that such suits are outside the jurisdiction of the federal courts, but only that Congress could not invest that jurisdiction in non-Article III judges. *Northern Pipeline Construction Co. v. Marathon Pipe Line, Inc.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *see* discussion *infra.*

**4.** The defendants, it will be recalled, originally sought removal *not* under § 1452 (the bankruptcy removal statute) but under § 1441 (the general removal statute). Only because the district clerk insisted that, by virtue of the existence of the bankruptcy, the matter *had* to be treated as a removal under § 1452, did this matter end up

before this court. Otherwise, the straightforward removal under § 1441 originally attempted by the defendants would have been handled under the procedures set out in §§ 1446–1450 before the district court.

**5.** In *Fairchild,* this court held that the trustee's selection of forum should be accorded significant weight, and denied a motion to remand. *Fairchild,* 4 Tex.Bankr.Ct.Rptr. at 317. In *El Paso Pharm,* the court observed that a trustee's selection of a state law forum to pursue litigation should also be honored, again in deference to the fundamental purpose of the removal statute to centralize the administration of the bankruptcy estate and to maximize the ability of the trustee to manage the estate to best effect. *In re El Paso Pharm, Inc.,* 130 B.R. 492 at 497 (Bankr. W.D.Tex.1991). Both of these decisions emphasize the significance of the trustee's selection of forum as a factor in the court's decision whether to remand. Neither decision makes the trustee's choice of forum controlling, however. In this case, a competing equity happens to override the importance of that factor.

should or should not be remanded to state court, consider whether removal under § 1441 was available as a matter of law to these defendants.

■■■■ Entirely different considerations come into play when remand is sought under § 1452(b) than when it is sought under § 1447 (the remand provisions applicable to actions brought under the general removal statute). *See In re Fairchild Aircraft Corp.*, 4 Tex.Bankr.Ct.Rptr. 308, 312, 317, 1990 WL 119650 (Bankr.W.D.Tex.1990), *recommendation adopted slip op.* (W.D.Tex.1990) (Garza, D.J.). With regard to a request for remand under § 1452(b), the bankruptcy court may remand or not remand on any equitable grounds, bearing in mind the primacy of the trustee's entitlement to select the forum in which to pursue a given cause of action. *Id.* By contrast, had this matter been removed to the district court pursuant to § 1441, the district court, if it otherwise has subject matter jurisdiction, has a duty to hear the matter (absent independent compelling state law interests that might favor abstention, as distinguished from remand). *Fairchild Aircraft, supra; Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); *Abing v. Paine, Webber, Jackson & Curtis*, 538 F.Supp. 1193 (D.Minn.1982); *but see Sykes v. Texas Air Corp.*, 834 F.2d 488 (5th Cir. 1987) (discussing scope of appellate review of remand orders and distinguishing *Thermtron*). The test is so completely different that, if the defendants were entitled to removal under the general removal statute all along, then forcing them to submit to the standards for remand in bankruptcy cases subjects them to a substantial injustice.

■■■■ At the same time, bankruptcy courts do not have the authority to entertain a general removal under § 1441 because bankruptcy courts are not empowered[6] to consider matters solely on the basis of diversity of citizenship—only district courts can hear diversity cases. Nor does this court have the power to decide the issues raised in §§ 1446–1447 (relating to removal and remand of such cases). *See Sykes v. Texas Air Corp.*, 834 F.2d at 492. More significantly, the provision in § 1447(d) that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ..." runs counter to the requirement that the decisions of Article I judges be subject to some sort of review by an Article III court in order to avoid violating Article III of the Constitution. *See generally Northern Pipe Line Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[7]

**6.** The bankruptcy judge's authority to hear matters is defined by Section 157, which empowers that judge to "hear and determine, ... and to enter appropriate orders and judgments, subject to [appellate] review ..." in core proceedings within the bankruptcy jurisdiction of the district court (defined by §§ 1334(a), (b)), and also empowers the bankruptcy judge to try to judgment *noncore* proceedings with the consent of the parties and to act essentially as an adjunct to the district court (much like a magistrate) with regard to noncore proceedings where the parties do not consent. 28 U.S.C. §§ 157(a), (b), (c). Original *jurisdiction* is vested in the district courts, with the bankruptcy judges "empowered" to *exercise* the district judge's jurisdiction if the district judge refers the matter to the bankruptcy judge. *Compare* 28 U.S.C. § 1334 *with* 28 U.S.C. § 157. By the same token, the district judge may, on motion of a party or on its own motion, withdraw the reference, pulling the case back to the district court. 28 U.S.C. § 157(d). In order to keep these concepts straight, it is helpful to think of the district judge's *jurisdiction* and the bankruptcy judge's *powers.* Jurisdiction defines whether the matter can be entertained at all by the federal courts, which are courts of limited jurisdiction. Empowerment, by comparison, tells us whether Congress has conferred on a given judicial officer the power to *exercise* that jurisdiction. Even though both features are elements of jurisdiction in the broader sense, it is helpful to break the two concepts down when talking about bankruptcy jurisdiction, to minimize confusion.

**7.** None of this prevents the court from reaching the question whether, in the abstract, a litigant similarly situated has the right to remove a case under the general removal statute notwithstanding the fact that one of the parties in the litigation happens to be a bankruptcy estate. The answer to that question is relevant to the issue of remand under § 1452. The court is not, of course, ruling on whether removal should have been entertained by the district court in this case under § 1441, for it is beyond the power of this court to make such a ruling. Only the district court had the power to rule on that question, and it declined to do so. We here merely address the *legal possibility* of removal under § 1441, solely in order to decide the re-

The court at the outset concurs with the reasoning of the district court regarding the availability of § 1452 as one legitimate basis for removal to the federal court (a decision premised primarily on the availability of subject matter jurisdiction under § 1334(b)). Going further, however, this court also finds that § 1452 is *not* the exclusive basis for removal, even though one of the parties to the litigation is in bankruptcy. The wording of § 1452 is permissive and not exclusive ("a party *may* remove ... to the district court ... if such ... court has jurisdiction ... under section 1334 ...."). 28 U.S.C. § 1452(a) (emphasis added). Meanwhile, the wording of § 1441 is broad ("... *any civil action* ... of which the district courts ... have original jurisdiction, *may be removed* by the defendant or the defendants, to the district court ...."). 28 U.S.C. § 1441(a) (emphasis added). Thus, a plain reading of the statute suggests that a defendant ought to have the right to remove an action to the district court under § 1441, as well as under § 1452, so long as the removal is otherwise qualified.[8]

There are compelling reasons for this conclusion beyond the language employed in the statutes themselves. One is that the basis (and so the justification) for removal of diversity jurisdiction cases is fundamentally different from the basis for removal of bankruptcy jurisdiction matters. The bankruptcy removal has to do primarily with centralizing the administration of a case before one forum. *See In re Fairchild Aircraft Corp.*, 4 Tex.Bankr.Ct.Rptr.

308, 312, 317, 1990 WL 119650 (Bankr. W.D.Tex.1990), *recommendation adopted slip op.* (W.D.Tex.1990) (Garza, D.J.). General removal, however, is concerned primarily with affording a foreign party with an impartial forum. *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61, 87, 3 L.Ed. 38 (1809). If the plaintiff in a given case is the trustee in bankruptcy (or the debtor in possession), and that trustee *chooses* to commence a matter in state court, then that trustee has already decided that the benefits of the state forum *outweigh* the benefits of centralized administration. The plaintiff here does not need § 1452 to bring this case into bankruptcy court—the plaintiff *wants* to be in state court.

The non-trustee defendants meanwhile lack standing to insist on centralized administration with regard to a pending bankruptcy case, as these defendants are not even party to the bankruptcy case (much less the ones who have responsibility for its administration). Removal by the defendants under § 1452 would not be justified under the theory of centralized administration if initiated by these defendants, and remand would have been entirely appropriate had it been attempted, as the trustee's choice of forum is normally paramount when it comes to remand under § 1452, and will in the usual case be respected by the court. *In re Fairchild Aircraft Corp., supra; In re El Paso Pharm, Inc.*, 130 B.R. 492, 496 (Bankr.W.D.Tex. 1991).[9]

On the other hand, these defendants seeking removal under § 1441 *does* make

---

mand issue placed before us under § 1452(b), not to second-guess the decision of the district court.

**8.** There is no question here that there is diversity of parties sufficient to satisfy jurisdiction under § 1332, satisfying the predicate requirement of § 1441(a). 28 U.S.C. §§ 1332, 1441(a). Section 1445 specifies which actions are expressly *not* removable, but uses language which applies equally to removals attempted under *either* § 1441 *or* § 1452, so it is no bar to removal under § 1441. 28 U.S.C. § 1445. The removing party must normally follow the requirements set out in § 1446, but in this case, the defendants were prevented from doing so by circumstances beyond their control. Their noncompliance is therefore irrelevant to the present inquiry. Therefore, the court concludes that the

defendants' removal would have in all respects qualified under § 1441 and would not have been dismissed for being done improperly or remanded for lack of jurisdiction.

**9.** Indeed, this is precisely why this court originally decided to remand the case back to state court. In *El Paso Pharm*, the trustee (debtor-in-possession) filed the lawsuit in state court, and the defendant removed the matter to bankruptcy court pursuant to § 1452(b). The court remanded the case to state court, honoring the trustee's choice of forum. In *Fairchild*, the situation was reversed. The bankruptcy estate was the *defendant* in the state court litigation, and so fell squarely within the intended ambit of § 1452(a) when it (via the Chapter 11 Trustee) removed the cases to federal court. The court denied the motion to remand.

sense. It is the defendants' concern about a parochial forum which motivated the invocation of removal on the basis of diversity of parties, not the fact of the plaintiff's bankruptcy status. The defendants seek removal not to be in bankruptcy court but to be in district court, before a court which can entertain a diversity case. They merely wanted the impartial federal forum in district court that diversity jurisdiction and the removal provisions of § 1441 were designed to assure to *any* foreign party haled into a local state court, regardless who the plaintiff is. So long as the defendants otherwise qualified under that statute, the mere fact that the plaintiff is a representative of a bankruptcy estate should have had no impact on this fundamental entitlement.

■ One could conceivably argue that the more specific provisions of § 1452 should override the general provisions of § 1441, mandating that any removal where an estate is a party is automatically a "bankruptcy removal," so that § 1441 is never available.[10] A recent decision of the United States Supreme Court lays this argument to a quick rest, however. *Connecticut Nat. Bank v. Germain,* — U.S. —, 112 S.Ct. 1146, 1146, 117 L.Ed.2d 391 (1992) (finding that the special appellate jurisdiction over bankruptcy appeals set out in § 158(d) does not preclude general appellate jurisdiction of final district court orders under § 1292 of otherwise interlocu-

tory matters). In *Germain,* the Court stated that "[r]edundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, ... a court must give effect to both." *Id.* That there is overlap between § 1441 and § 1452(a) is thus not significant in deciding whether a more specialized bankruptcy provision overrides or eliminates a more generalized provision of long standing, absent a clear indication in the legislative history to that effect (a clear indication not present here). Indeed, to be faithful to *Germain,* we must "give effect to both" § 1452(b) and § 1441, permitting removal under either one notwithstanding the bankruptcy connection. *See id.*[11]

■ Assuming that § 1441 general removal is otherwise available as a matter of law to a litigant such as these defendants, does it matter that they were forced into using the bankruptcy removal statute instead? Because the consequences of removal under § 1441 (as opposed to § 1452) are dramatically different for both the court and the parties, the answer to this question is clearly yes. Matters removed under § 1452 are immediately referred under the general order of reference to the bankruptcy courts under § 157(a). Matters removed under § 1441 on the other hand are not amenable to reference, because the jurisdiction invoked does not arise under § 1334, but under § 1332 (the diversity jurisdiction statute).[12] Therefore, § 1452 mat-

---

**10.** As further support for that position, one might even note that the federal question jurisdiction removal under § 1441(b) (permitting the removal of any case arising under federal law) could conceivably apply to all bankruptcy matters, for which jurisdiction is already provided under § 1334 of Title 28, creating an overlap with § 1452(b) such that the more specific provision should control. *See, e.g., Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984) (discussing the overlap in the context of appellate review of remand decisions). However, removal of bankruptcy matters under this theory would be a bad fit, as such removal would only be available when the original jurisdiction of the district court is "... founded on a claim or right *arising under* the ... laws of the United States." 28 U.S.C. § 1441(b). This language could at best only apply in a bankruptcy context to actions initiated by the trustee in state court *arising under* one of the sections of the Bankruptcy Code conferring a claim or right—e.g., one of

the avoidance provisions. *See* 11 U.S.C. §§ 542–553. Many other bankruptcy matters (i.e., those arising in or *related to* the case) would not be amenable to removal under § 1441(b) under this theory. *See* 28 U.S.C. § 1334(b).

**11.** It is worth noting in passing that *Germain* also in all likelihood overrules the Fifth Circuit's position on this issue as articulated in *Sykes v. Texas Air Corp.,* 834 F.2d 488 (5th Cir.1987). *See also In re Rayburn Enterprises, Inc.,* 781 F.2d 501 (5th Cir.1986); *In re Compton,* 711 F.2d 626 (5th Cir.1983).

**12.** Of course, the notion of "related to" jurisdiction is sufficiently broad that it might well sweep up even a case which also falls within the diversity jurisdiction of the district court, as is the case here. That does not alter the fact that it is only the *first* category of jurisdiction which 28 U.S.C. § 157(a) permits the district court to refer to this court, not the second.

ters are heard by an Article I court (unless the reference is withdrawn on timely motion of a party), while § 1441 matters are heard by an Article III court. The difference is significant, because of its impact on how and whether the case can be tried to a jury.

Even a cursory examination of the underlying complaint in this case confirms that the parties are in all likelihood entitled to a jury trial if they so request it, because the matters involve the adjudication of private rights and seek monetary damages for at-law causes of action. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 40–49, 109 S.Ct. 2782, 2789–94, 106 L.Ed.2d 26 (1989). Although this court, as a general matter, is not at all averse to conducting a jury trial (and has in fact done so),[13] there are serious impediments to its doing so in this case. For example, the matter in question is not likely a "core proceeding." 28 U.S.C. § 157(b). Rather, it is more likely a non-core, related proceeding, in which this court cannot enter a final order upon its trial unless the parties consent. 28 U.S.C. § 157(c)(1). If they do not, and the parties also want a trial by jury, there is at least a potential Seventh Amendment problem raised by the provisions of § 157(c)(1), which permit *de novo* review of any matters to which a party timely and specifically objects. *See In re Cinematronics, Inc.,* 916 F.2d 1444, 1451 (9th Cir.1990) (*de novo* review offends Seventh Amendment's prohibition on retrial of a jury's findings, other than as already provided at common law). Perhaps the *de novo* review contemplated in this section does not offend the Seventh Amendment, on grounds that the review is no broader than that already available via motions for new trial and motions for judg-

ment notwithstanding the verdict (both recognized remedies in 1791 when the Seventh Amendment was adopted). That at least is a position which this court has espoused in one published decision. *See In re El Paso Pharm., Inc.,* 130 B.R. 492, 495 (Bankr. W.D.Tex.1991) (Clark, B.J.). However, no circuit court to date has had the opportunity to examine or rule on that theory. Whether this court could indeed conduct a jury trial of this adversary proceeding, therefore, is far from settled. *See In re Ben Cooper, Inc.,* 896 F.2d 1394, 1403 (2d Cir.1990) ("the Seventh Amendment may well render unconstitutional jury trials in non-consensual non-core proceedings").

Had the removal been effected under § 1441, on the other hand, the jury issue would not even *be* an issue, as there is little doubt that the district court could afford the parties a jury trial, subject only to appellate (as opposed to *de novo*) review. By being forced into a § 1452 removal, the defendants have been forced into an Article I forum not of their own choosing, where their jury trial rights have been substantially altered. *See* discussion *supra.* So also have their rights to an adjudication before an Article III court. *See Marathon, supra.* Just because the defendants did not want to be in state court does not mean that the defendants did not want a jury. Nor does it mean that they ever had any intention of consenting to a trial before a non-Article III tribunal. Undoubtedly, being deprived of § 1441 removal has hurt the defendants, and sending them back to state court would only exacerbate the harm.[14]

The outcome of this court's ruling on the remand issue should, to the extent possible,

---

**13.** The district court for the Northern District of Texas ruled that there is nothing about bankruptcy courts, in and of themselves, which makes them any less able to conduct a jury trial, at least as a matter of constitutional law. *M & E Contractors v. Kugler–Morris General Contractors,* 67 B.R. 260, 266 (N.D.Tex.1986); *see also Citibank, N.A. v. Park–Kenilworth Industries, Inc.,* 109 B.R. 321, 329 (N.D.Ill.1989); *Ellenberg v. Bouldin,* 125 B.R. 851, 855 (N.D.Ga.1991); *but see In re Baker & Getty Financial Services, Inc.,* 954 F.2d 1169, 1173 (6th Cir.1992) (absent express statutory authorization, bankruptcy courts may not conduct jury trials).

**14.** Interestingly enough, restricting the parties to removal only under the bankruptcy removal statute also threatens to eviscerate the *plaintiff's* entitlement to a jury trial, for the same reasons. Obviously, the plaintiff has not waived its entitlement to a jury just because it happens to be a debtor in bankruptcy. *See In re Jensen,* 946 F.2d 369, 373–74 (5th Cir.1991). If anything, it is a safe assumption that the plaintiff brought the suit in state court in part because the plaintiff *wanted* a jury, without all of the jurisdictional difficulties that such a request can create in this court.

attempt to preserve the rights the parties thought they had (i.e., the defendants' right to an impartial federal forum and the plaintiff's right to a jury trial). That, after all, is a significant equitable consideration which ought to influence this court's ruling under § 1452(b). By retaining rather than remanding this case, the court preserves for the parties their opportunity to petition the district court to withdraw the reference on timely motion, preserving thereby the parties' constitutional entitlement to a jury trial as well. There is no guarantee, of course, that the district court will in fact *grant* a motion to withdraw the reference, but the defendants should not be denied at least the opportunity to get the matter back before that forum. If this court were to remand this case back to state court, removal will not again be possible, and this court will only have compounded the error committed by the district clerk in failing to accept the original removal under § 1441 in the first place.

With all of these considerations in mind, this court concludes that remand to state court is not appropriate. The defendants here tried to timely remove this action under § 1441 and, but for the intervention of the district clerk's office, they would have succeeded in placing this matter before an Article III district court. They should not be penalized by this happenstance which was entirely beyond their control. The matter is in all other respects properly within the subject matter jurisdiction of the federal court under 28 U.S.C. § 1332. Remand to state court would defeat the very relief to which the defendants are otherwise entitled under federal law, an outcome which this court finds to be inequitable under the facts of this case.[15]

For the foregoing reasons, the court concludes, on second motion for rehearing, that remanding this case under § 1452(b) is not appropriate, given the circumstances of this case. The clerk of the court is directed to prepare an order relative to pretrial, placing this matter on the court's trial docket and placing the parties on a discovery schedule. Meanwhile, the parties are encouraged to either file a timely motion to withdraw the reference with the district court, or to consent in writing to the entry of a final order by this court, to assure their jury trial rights are protected. Of course, another alternative is for both parties to simply waive their entitlement to a jury trial, in which case the matter can proceed to bench trial in this court without further ado. An order denying remand will be entered by the court.

---

**15.** That this court might not be able to conduct a jury trial of the matter is *not,* in this court's view, sufficient cause to remand this matter to state court, precisely because the parties have available to them the remedy of a timely motion to withdraw the reference, permitting the district court an opportunity to cure the constitutional impediment by taking over the adversary itself and giving the parties their jury (assuming one party asks for a jury and does not consent to the entry of a final order by this court). This court has serious reservations regarding the constitutionality of 28 U.S.C. § 157 in general, but declines to reach that issue so long as there is a way to avoid it. One way to avoid it is to give the district court an opportunity to avoid it—i.e., by awaiting the district court's withdrawal of the reference (on timely motion of a party, hopefully).