In re NUCORP, LTD., Debtor.

Ann H. Womer Benjamin, Ohio Superintendent of Insurance, in Her Capacity as Liquidator and on Behalf of and in the Name of the Estates of Credit General Insurance Company and Credit General Indemnity Company, Plaintiff,

v.

Jason Carl Richmond, Audrey Richmond, Insurance Advisors, Inc., a Minnesota Corporation, and Does 1 through 25, Inclusive, Defendants.

Bankruptcy No. 05–32762.
Adversary No. 05–3201.

United States Bankruptcy Court,
D. Minnesota.

Aug. 18, 2005.

William I. Kampf, Henson & Efron PA, Minneapolis, MN, for debtor.

GREGORY F. KISHEL, Chief Judge.

On August 9, 2005, the Court heard argument on the Plaintiff's motion to remand this matter to the Minnesota state courts. Brian F. Leonard argued on behalf of the Plaintiff, James M. Jorissen and Matthew R. Burton noting appearances for the Plaintiff as well. Fred R. Jacobberger made a presentation on behalf of Jason Carl Richard, Audrey Richmond, and Insurance Advisors, Inc. (collectively, "the Defendants"). Joel D. Nesset noted an appearance on behalf of the Debtor in the underlying bankruptcy case. Upon the moving and responsive documents, parts of the documentary record in the underlying case, and the record made at the hearing, the Court memorializes the following order.

## BACKDROP

The Debtor in BKY 05–32762 is a Minnesota corporation. It does business as a general insurance agency; it also acts

as a reinsurer in connection with some of the placements of coverage that it makes for its clients. Its business is limited to workers' compensation insurance. Defendant Jason C. Richmond is a majority shareholder in the Debtor.[1] Defendant Audrey Richmond is Jason C. Richmond's spouse. Defendant Insurance Advisors, Inc., is a business entity owned by Jason C. Richmond and Fred R. Jacobberger.

For some years before late 2000, the Debtor was an agent and sub-producer of Credit General Insurance Company and Credit General Indemnity Company, two insurers organized under Ohio law (collectively, "the Credit General companies"). In those capacities, the Debtor marketed and serviced insurance programs of the Credit General companies. In January, 2001, the Credit General companies were placed into liquidation by the Ohio Court of Common Pleas.[2] That court appointed the Plaintiff to carry out the liquidation.

The Plaintiff took action against the Debtor in the liquidation proceeding in the Ohio State Court, asserting that the Debtor owed a large sum of money to the liquidation estates. Via this claim, it sought to have the Debtor account for premiums paid by insureds of the Credit General companies that the Debtor had received before and after the order for liquidation.[3] Jason Richmond decided that the Debtor could not afford to defend such a substantial claim in an out-of-state forum; the decision to file for relief under Chapter 11 followed that. The Debtor filed its petition in this court on April 26, 2005.

One day before that, the Plaintiff had served the Defendants with a summons and complaint in a lawsuit venued in the Minnesota State District Court for the Fourth Judicial District, Hennepin County. Via that action, the Plaintiff seeks to have the Defendants found liable in their individual capacity for the value of the client premiums that she alleges were the property of the liquidation estates of the Credit General companies. She pleads seven different theories of recovery against the Defendants.

On July 8, 2005, the Defendants filed a notice of removal in the Debtor's Chapter 11 case. In it, they asserted that this court had jurisdiction over the action commenced against them in Hennepin County District Court "pursuant to 28 U.S.C. §§ 157 and 1334," and that they were entitled to remove the "Hennepin County Action" to this court on three stated grounds.[4] In the text of the notice, the

---

1. Fred R. Jacobberger, the Defendants' counsel for this matter, is the sole minority shareholder.

2. Prior to that, the Credit General companies had been placed, successively, under supervision and then into rehabilitation, in the same court.

3. The amounts cited in connection with the Plaintiff's collection effort have varied from several hundred thousand dollars up to several million dollars. In a proof of claim filed on behalf of the Plaintiff in BKY 05–32762, the Plaintiff asserts that the Debtor is liable for a "minimum amount owing" of between $1,750,395.04 and $2,142,647.32. The Debtor strongly contests its liability on this claim, under several theories of defense.

4. The grounds were as follows: first, that the Plaintiff's claims against the Defendants "are derivative of claims that [P]laintiff has previously asserted against [the] Debtor," requiring adjudication of common facts; second, that at least some of the claims in suit in Hennepin County "are now property of the [Debtor's] bankruptcy estate"; and third, that the "[P]laintiff's claims implicate determinations of what is and is not property of the estate, and would directly affect the adjustment of the debtor-creditor relationship." The Defendants asserted that "[u]pon removal," the Hennepin County lawsuit would "become a core proceeding" in the Debtor's Chapter 11 case.

Defendants' counsel did not cite a statutory basis for the removal.

In response, the clerk of this court opened a file, ADV 05–3201, within the Debtor's Chapter 11 case.

## MATTER AT BAR

The Plaintiff responded to the notice of removal by setting the motion at bar onto the court's calendar. Her counsel captioned the motion as a request to the court to "Remand or in the Alternative Abstain." The text of counsel's initial memorandum puts the stress in argument in a different order, however. The great bulk of the text urges this Court to relinquish this lawsuit under the "mandatory abstention" provision of 28 U.S.C. § 1334(c)(2) and the "discretionary" provision of 28 U.S.C. § 1334(c)(1) alike; the development of a request in the alternative for remand under 28 U.S.C. § 1452(b) is a terse windup to the memorandum.

The Defendants and the Debtor filed responses to the motion, tracking the Plaintiff's arguments in the development of their analysis. The Plaintiff's reply did not stray outside those lines either.

It was only at oral argument, and without citation of case law, that the Plaintiff's counsel briefly raised the question of whether this lawsuit was even capable of being removed to the federal courts.

## DISCUSSION

As it turns out, that analytic tack is dispositive of the question of whether this lawsuit may proceed before the bankruptcy court. The short answer is that it may

not. The reasons are two-fold. One springs from the statutory authority invoked by the Plaintiff's counsel, late and almost in passing. The other is even more deep-seated in the statutory governance of the federal courts' power to receive and entertain disputes arising on the fringes of a bankruptcy case.

As to these theories, this seems to be a case of first impression on the second, and very nearly so on the first.

Before treating the specifics, though, the authority on which the Defendants sought to remove this lawsuit to the bankruptcy court must be identified. The Defendants' counsel has not done this, in connection with the original filed notice or now, but the point is important.[5]

■ Under the posture of the parties, and given the sequential flow of the lawsuit to this point, there is only one arguable source of authority for a removal-the provision for "[r]emoval of claims related to bankruptcy cases" under 28 U.S.C. § 1452(a):

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. §] 1334 ...

Thus, the Defendants will be deemed to have acted under color of this statute when they filed their notice of removal.[6]

5. As the Eighth Circuit observed in a different procedural context,

when the moving party fails to specify the rule under which it makes a ... motion, that party leaves the characterization of the motion to the court's somewhat unenlightened guess ...

*Sanders v. Clemco Industries,* 862 F.2d 161, 168 (8th Cir.1988). This will leave the derelict party "subject to the hazards" of the substantive implications of the court's characterization, under governing statute or rule. *Id.*

6. The reasoning for this conclusion is straight-forward, but it rests on several points. First, the Defendants made no bones

This brings us down to the specifics.

*1. As an action to enforce Ohio's power to regulate the insurance industry, this lawsuit could not be removed under 28 U.S.C. § 1452(a).*

The Plaintiff's claims against the Defendants stem from the Debtor's dealing with the failed Credit General companies and their liquidation estates. The Plaintiff maintains that the Defendants, as employees or agents of the Debtor or in consort with the Debtor, failed to turn over paid client premiums to the liquidation estates, and that the Defendants are individually liable to the liquidation estates as a consequence of that failure.

In doing this, the Plaintiff is exercising one of the powers of a liquidator under the Ohio law regulating insurance companies, to "[c]ollect all debts and monies due and claims belonging to the insurer." Ohio Rev.Code Ann. § 3903.21(A)(6). This statute is a part of Chapter 3903 of the Ohio Revised Code, which the Ohio Legislature enacted "for the specific purpose of protecting 'the interests of insureds, claimants, creditors, and the public generally ...'" *Fabe v. Prompt Finance, Inc.,* 69 Ohio St.3d 268, 273, 631 N.E.2d 614, 618 (1994), quoting Ohio Rev.Code Ann. § 3903.02(D). *See,* in general, *Benjamin v. Sawicz,* 159 Ohio App.3d 265, 268–269, 823 N.E.2d 879, 881–882 (2004).

Given the enunciated legislative purpose, of protecting the general public as well as specified constituencies, the process of liquidating an insurance company under Ohio law is an exercise of a "police or regulatory power." Perforce, a suit brought by a liquidator under statutory empowerment is "a civil action brought by a governmental unit" to enforce that power. Both of these fall well within the contemplation of 28 U.S.C. § 1452(a).

As a result, this lawsuit was not capable of removal to the federal courts under color of that statute, in the first instance. *Cf. In re Pacific Gas & Elec. Co.,* 281 B.R. 1, 10–13 (Bankr.N.D.Cal.2002) (claims in state court suit brought by California Attorney General and California municipality against debtor in Chapter 11 under Unfair Competition Act were exercise of police and regulatory powers, preventing removal to bankruptcy court under 28 U.S.C. § 1452(a)); *In re Friedman & Shapiro, P.C.,* 185 B.R. 143, 144–145 (S.D.N.Y.1995) (state disciplinary proceeding against attorney whose professional services corporation had filed for Chapter 11 was exercise of police and regulatory powers, barring removal to bankruptcy court); *In re Forster,* 146 B.R. 383, 384–386 (Bankr.N.D.Ohio 1992) (same conclu-

___

about the fact that they were asserting federal jurisdiction due to the Debtor's presence in Chapter 11, their close legal relationship to an entity that thus was already under the jurisdiction of this court, and their assertion that that relationship helped stamp this lawsuit as a core proceeding within the Debtor's Chapter 11 case. Second, on the face of their documents the Defendants sited the end-point of the removal in this court, and not in the United States District Court. Had they directed it to the latter, the removal might have been characterized as one under color of 28 U.S.C. § 1441(a). The way it was steered to a particular unit of the district court stamps the

removal as one under the bankruptcy-specific provision. (Though 28 U.S.C. § 1452(a) speaks in terms of a removal to the district court just as 28 U.S.C. § 1441(a) does, a transmittal under § 1452(a) made directly to the bankruptcy court is proper in this district. The automatic reference by the district court enables the clerk of this court to receive and process all bankruptcy-related filings in the first instance. See Loc. R. Bankr.P. (D.Minn.) 1070–1 (providing for a reference of "[a]ll bankruptcy cases and proceedings, including any claim or cause of action that is removed under 28 U.S.C. § 1452 ...").)

sion, for environmental enforcement action brought by state attorney general in state court against debtor in Chapter 11); *In re Rabzak*, 79 B.R. 966, 967–969 (Bankr. E.D.Pa.1987) (prosecution of debtor for violation of township rubbish ordinance could not be removed to bankruptcy court).[7]

### 2. Under the "forum defendant rule" of 28 U.S.C. 1441(b), this lawsuit could not be removed.

■ At oral argument, the Plaintiff's counsel explained the reason for the original venue of her action against the Defendants in the Minnesota state courts: establishing personal jurisdiction over the Defendants in the liquidation proceeding in Ohio would likely be difficult; thus, suit in the courts of the state of the Defendants' residence or place of business would avoid costly satellite litigation over jurisdiction that probably would not be fruitful for the Plaintiff anyway.[8]

So, the Plaintiff opened the fray in a forum as to which the Defendants made no jurisdictional challenge, at least initially. The Defendants, however, essayed a removal to a different forum, on the federal level, and the Plaintiff challenges the efficacy of that attempt.

The Plaintiff's argument is that 28 U.S.C. § 1441(b) denied the Defendants the power to remove the Hennepin County action to any federal court. The theory rests on the second sentence of that section, but to make sense of it one must review the whole provision:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of

**7.** There is one extant decision, *In re Reliance Group Holdings, Inc.*, 273 B.R. 374 (Bankr. E.D.Pa.2002), in which the court concluded that the Pennsylvania Insurance Commissioner, bringing an emergency proceeding in the capacity of the liquidator of a failed insurance company, was not acting as a governmental unit exercising police and regulatory powers within the contemplation of 28 U.S.C. § 1452(a), but rather was acting for the benefit of creditors, members, policyholders, or shareholders of the insurer. The result in *Reliance Group Holdings* was driven to a great extent by the nature of the relief that its liquidator was seeking, a declaration that the failed insurer's assets had included certain policies claimed by the debtor in bankruptcy. 273 B.R. at 385–386. The matter at bar is readily distinguishable; the Plaintiff's success against the Defendants would not directly impact on the Debtor's bankruptcy estate at all. Further, because the Debtor is not a named party it likely would not have even the indirect effect of issue preclusion on common points of fact. With that factor taken out of the mix, the Ohio insurance statute's pronouncement-that liquidation is to protect the public welfare as well as the pecuniary interests of the failed insurer's direct constituents-comes to the fore, and it mandates a different outcome here. *See In re Commonwealth Cos., Inc.*, 913 F.2d 518, 523 (8th Cir.1990) (construing exception from automatic stay in bankruptcy under 11 U.S.C. § 362(b)(4), for actions "by a governmental unit ... to enforce such governmental unit's ... police and regulatory power"; on legislative history of § 362(b)(4), drawing distinction between actions to protect public health, safety, and welfare and actions "by a governmental unit to protect a pecuniary interest in property of the debtor or property of the [bankruptcy] estate ...").

**8.** The thought was that long-arm jurisdiction would be harder to argue as to the Defendants; the acts complained-of all occurred in Minnesota, and the basis for arguing a substantial forum connection to Ohio via the transaction of business there would be nowhere near as strong for the Defendants as it was for the Plaintiff's direct action against the Debtor.

the State in which such action is brought.

28 U.S.C. § 1441(b).

In context, this provision clearly modifies 28 U.S.C. § 1441(a), the broader provision that actually grants parties-litigant the power to remove state court litigation to the federal courts.[9] *First Nat. Bank of Pulaski v. Curry,* 301 F.3d 456, 461 n. 3 (6th Cir.2002); *Thompson v. Merrell Dow Pharmaceuticals, Inc.,* 766 F.2d 1005, 1006 (6th Cir.1985), aff'd, *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Thomas v. Shelton,* 740 F.2d 478, 482 (7th Cir.1984). Under the statute's very language, removal to a federal court under § 1441(a) is possible only when the federal forum would have had original jurisdiction over the subject matter of the suit. *Jefferson County, Ala. v. Acker,* 527 U.S. 423, 430, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) ("It is the general rule that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit."); *Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.,* 159 F.3d 1209, 1211 (9th Cir.1998). By making the citizenship of any of the parties irrelevant where a removed action is governed by federal substantive law, the first sentence of § 1441(b) clearly dovetails with an assumption of "federal question" jurisdiction under 28 U.S.C. § 1331. *In re Otter Tail Power Co.,* 116 F.3d 1207, 1213 (8th Cir. 1997) (noting that once a case is properly removed to a district court, the district court has no discretion to remand a claim that states a federal question).

The second sentence, however, trims back the availability of removal where other sources of jurisdiction would lie. *Irvin Jacobs & Co. v. Levin,* 86 F.Supp. 850, 852 (N.D.Ohio 1949) ("[T]he second sentence of Section 1441(b) is a limitation on Section 1441(a)."). Applying in lawsuits where the only arguable basis for federal jurisdiction would be diversity of citizenship under 28 U.S.C. § 1332, the second sentence prohibits a segue into the federal court unless *none* of the named defendants is a citizen of the state in which the federal forum is located.[10] *Coury v. Prot,* 85 F.3d 244, 252 (5th Cir.1996) ("[A]defendant may not remove a state action to federal court if a defendant is a citizen of the state in which the action is filed."). This straitening of latitude to elect the federal forum, as between the plaintiff that has initiated litigation and the defendant who may seek removal, is a simple and undeniable fixture of the judicial structure erected by Congress. *Belcufine v. Aloe,* 112 F.3d 633, 637 n. 6 (3d Cir.1997). *Cf.* Richard H. Fallon, Jr., Daniel J. Meltzer and David L. Shapiro, *The Federal Courts and the Federal System* 1616 (4th ed.1996) (noting, in the context of removal, that there are a number of federal statutes under which

---

**9.** In pertinent part, 28 U.S.C. § 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

**10.** Put another way, to sustain a removal premised on jurisdiction under 28 U.S.C. § 1332, the diversity of citizenship among parties must run with the plaintiff planted in the state of the forum, and the defendants all planted outside that state. (As an aside, this construction of the second sentence coheres only if the adjective "such" applies to the broader concept of any "civil action of which the district courts have original jurisdiction," rather than the subset of actions founded on federal substantive law. Since there would be no possible application for the second sentence if the latter were the concept signified by "such," this is the only reasonable construction.)

defendants are denied the choice of forum given to plaintiffs).

However, this argument only connects if § 1441(b) applies to removals effected under color of § 1452(a), like this one was.[11] Interestingly, there is no case law on-point to this specific problem. However, corollary authority from the United States Supreme Court fully supports the application, and makes the case for the Plaintiff.

In *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995), the Supreme Court addressed whether 28 U.S.C. § 1447(d)— another provision of general applicability to removal and removed actions—applied in a lawsuit that had been removed to the federal bankruptcy jurisdiction under color of § 1452(a). Its holding is succinct and crystal-clear:

> [T]here is no indication that Congress intended § 1452 to be the exclusive provision governing removals and remands in bankruptcy or to exclude bankruptcy cases from § 1447(d)'s coverage .... [T]here is no reason §§ 1447(d) and 1452 cannot comfortably coexist in the bankruptcy context.

516 U.S. at 124–125, 116 S.Ct. at 495.

On the same considerations, it is clear that the second sentence of § 1441(b) is properly applied to an attempted removal to the federal bankruptcy jurisdiction. First, there is no indication that Congress intended to the contrary. Second, the two statutes here go to the availability of legal recourse in a federal forum for matters that were already subject to the jurisdiction of a state forum, just as the provisions involved in *Things Remembered* did.[12] It is entirely within Congress's purview to

further limit the limited jurisdiction of the federal courts.

Thus, there is no reason that §§ 1441(b) and 1452 "cannot comfortably coexist in the bankruptcy context" either, with both given effect by applying § 1441(b) to limit the scope of § 1452(a). *Things Remembered,* 516 U.S. at 125, 116 S.Ct. at 495. *See also Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("... so long as there is no 'positive repugnancy' between two laws" that apply on their face to the same problem of federal jurisdiction, "a court must give effect to both ..."). *Accord, Belcufine v. Aloe,* 112 F.3d at 637 n. 6. *See also In re Biglari Import & Export, Inc.,* 142 B.R. 777, 783 (Bankr. W.D.Tex.1992) (decided before *Things Remembered;* concluding that, in the abstract, §§ 1441 and 1452 could lie simultaneously to support removal of litigation commenced by Chapter 11 debtor to federal district court's jurisdiction).

So, the limitation of the second sentence of § 1441(b) applies to this matter. It made removal under § 1452(a) unavailable to the Defendants because they are all citizens of Minnesota, the forum state in which lies the federal court to which they directed their removal.

*3. Disposition of Plaintiff's motion.*

The logical drift of these rulings is that this lawsuit was never really before this court, because it was not capable of being brought here in the first place. As a technical matter, then, remand is not really for the dispensing, because it suggests the act of sending a lawsuit *back* to its original forum. Though the *parties* have certainly been here, doing battle over

---

11. The Plaintiff's counsel did not touch on this issue in his opening round of argument, and had no answer when queried about it.

12. Section 1447(d) goes to the availability of relief on appeal, rather than relief on the initial merits in a trial court as § 1447(b) does. However, this is a distinction without a difference.

these very points, their lawsuit never left that forum.

Thus, nominally, the Plaintiff's motion for remand must be denied, but only because it was not necessary in the first place.[13]

## ORDER

On the foregoing memorandum of decision,

IT IS HEREBY DETERMINED AND ORDERED:

1. The act of the Defendants in filing a notice of removal to commence ADV 05–3201, docket no. 1 there, was ineffective to bring to this court the lawsuit commenced by the Plaintiff against them in the Hennepin County District Court.

2. All claims and disputes between the Plaintiff and the Defendants that are pending in that lawsuit will proceed as appropriate before the Hennepin County District Court.

3. Accordingly, the Plaintiff's motion in the alternative for abstention or remand is denied.

13. And, obviously, the Plaintiff's motion for abstention need not be reached; both of her statutory theories presupposed the presence before the bankruptcy court of litigation over which it could have exercised concurrent jurisdiction. At least on the matter of "presence," that was not the case here.