Norman SYKES, et al.,
Plaintiffs-Appellees,

v.

TEXAS AIR CORPORATION,
Defendant-Appellant.

No. 86–2975.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 1987.

R. Michael Moore, A.J. Harper, II, Fulbright & Jaworski, Houston, Tex., for defendant-appellant.

Tom F. Coleman, Jr., Tom F. Coleman & Associates, Houston, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, GEE, and RUBIN, Circuit Judges.

GEE, Circuit Judge:

Texas Air Corporation removed this case from the state courts of Texas on the ground that it was related to a case in bankruptcy. The district court held that there was no bankruptcy jurisdiction and remanded the case to the state courts. Texas Air asks us to review the district court's decision. Because we cannot, we dismiss the appeal.

## A. Facts and Prior Proceedings

The plaintiffs are airline pilots who were employed by Continental Airlines at the time that it began bankruptcy proceedings in 1983. Continental rejected its collective bargaining agreement with the Air Line Pilots Association ("ALPA") (the plaintiffs' union) during the course of the bankruptcy case. The pilots then sued Texas Air, Continental's parent corporation, in Texas state court as third-party beneficiaries of a "side letter agreement"[1] between ALPA and Texas Air.

Texas Air removed the pilots' suit to federal district court. Texas Air asserted that it was entitled to some sort of indemnification[2] by Continental should the pilots'

---

1. Texas Air agreed with ALPA in the "side letter" not to employ non-union pilots in any other airline that it might create or acquire. The "side letter" served to bolster the ALPA–Continental collective bargaining agreement because Texas Air could not undermine that agreement by shifting aircraft and services provided by Continental to a new non-union subsidiary.

2. At oral argument, counsel for Texas Air asserted that Continental would have to indemnify Texas Air because of an "implied contract" between parent and subsidiary. Members of our panel, on the other hand, suggested that the

claim for indemnification sounded more like a claim in tort. The question of bankruptcy jurisdiction in this case probably turns on the precise nature of Texas Air's claim against Continental and, in particular, the defenses available to Continental if Texas Air loses this case and sues Continental for indemnification. See In re Wood, 825 F.2d 90, 93 (5th Cir.1987) ("related to" jurisdiction turns on "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy"; emphasis in original). Our disposition of this case makes it unnecessary, however, for

suit prove successful, and that there was original federal jurisdiction (and thus removal jurisdiction) because this potential effect on the Continental estate made the state-court action "related to" the Continental bankruptcy proceeding within the meaning of 28 U.S.C. § 1334(b).[3] The district court disagreed, ruling that there was no federal jurisdiction because the case was not "related to" the Continental bankruptcy and remanding it to state court.[4]

## B. Appellate Jurisdiction: The Problem

Texas Air's first task is to establish that we have jurisdiction to review the district court's order. Section 1452 governs both removals to the federal bankruptcy courts and the scope of appellate review of decisions to remand or not:

(a) A party may remove any claim or cause of action in a civil action[,] other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise.

28 U.S.C. § 1452. We have already held in general terms that there is no appeal from a remand order under § 1452(b) and its same-language predecessor statute. *See In re Rayburn Enterprises,* 781 F.2d 501, 502 (5th Cir.1986) (§ 1452); *In re Compton,* 711 F.2d 626, 627 (5th Cir.1983) (pre–1984 Amendments bankruptcy removal section codified at 28 U.S.C. § 1478).

Texas Air urges us to accept the reading of former § 1478(b), now § 1452(b),[5] found in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). In *Pacor,* the Third Circuit was asked to review a district court's remand for want of bankruptcy jurisdiction. The court first held that the remand order was appealable under the "collateral order doctrine." *Id.* at 990. Next, it considered whether the general rule in 28 U.S.C. § 1447(c)–(d)[6] of non-reviewability of district court remands for want of jurisdiction applies to bankruptcy cases removed under § 1452(a). The court pointed out that at the time § 1452 was enacted, it allowed removals from *any* court (not just state courts as in § 1441) by *any* party (not just defendants as in § 1441) to the pre-*Mara-*

---

us to figure out exactly what indemnification claims Texas Air could assert under tort or contract law, or what kinds of defenses Continental could raise in response.

**3.** Section 1334(b) reads:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**4.** The district court's order at times appears to conflate § 1334(b)'s three distinct categories of "[1] arising under title 11, or [2] arising in or [3] related to cases under title 11." But the district court actually analyzed the jurisdictional question within the proper category (whether the case was "related to cases under title 11"), utilizing the following test from *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984): whether the proceeding "could conceivably have any ef-

fect on the estate being administered in bankruptcy." This test from *Pacor* (or at least this sentence) is now the law of this circuit. *See In re Wood,* 825 F.2d 90, 93 (5th Cir.1987).

**5.** Our court not surprisingly treats the identical language in former § 1478 and present section § 1452 as having the same statutory meaning. *See Rayburn* 781 F.2d at 503. Therefore, we will sometimes refer to former § 1478 as § 1452 in our discussion of the older cases (such as *Pacor* ) that themselves refer to former § 1478.

**6.** Section 1447(c) and (d) read:

(c) If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case....

(d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, [with an exception for removal based on 28 U.S.C. § 1443 (equal protection violations in state courts) ].

*thon* [7] bankruptcy courts (and not the federal district courts as in § 1441). Because of "needless conflict and inconsistencies" that a contrary interpretation would create, the court concluded that § 1447(c) applies to 28 U.S.C. § 1441 removals only and not to bankruptcy removals, the latter being governed exclusively by § 1452. *Id.* at 991. Finally, the Third Circuit turned to § 1452(b) and applied its analytical knife: Because subsection (b) mentions only remands based on "equitable" grounds, and because the denial of reviewability applies to "order[s] entered under this *subsection*," the court held that while remand orders based on *equitable* grounds were unreviewable, remand orders based on *other* grounds (such as lack of jurisdiction) were fully reviewable in the Court of Appeals. *Id.* at 993.

Texas Air asks us to adopt *Pacor*'s reasoning and to hear this appeal. We are also directed to a footnote in our Court's decision in *Browning v. Navarro*, 743 F.2d 1069, 1076–77 n. 21 (5th Cir.1984), that appears to approve in dicta the distinction between the reviewability of equitable and other remands drawn in *Pacor*. [8]

### C. Appellate Jurisdiction: The Solution

We must dismiss the appeal. The reasoning of *Pacor* does not persuade us; even if it did we see no way around *Rayburn* and *Compton*.

The *Pacor* analysis turns on a sort of semantic crack in the statute rather than a sound appreciation of the strong congressional policy against review of remand or-

ders. The congressional policy rests on the unique administrative problems inherent in such appeals: Except in the highly unlikely event that a district court is so unsure of itself that it stays its decision to remand, the entry of a remand order ends the proceeding in the federal court and the state (or other [9]) court proceeding gets under way. If months or years later a federal Court of Appeals decides that the remand was improper, matters are thrown into confusion and the effort expended by the parties on the state court proceeding (along with a good deal of state judicial resources) is in jeopardy. And if the state case has proceeded to judgment, the subsequent re-removal is for naught as the parties are bound by *res judicata*. *Cf. Parsons Steel v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283, allowing injunctions of state court proceedings "to protect or effectuate" federal judgments, does not alter obligation of federal courts to give "full faith and credit" to prior state court judgments, 28 U.S.C. § 1738).

To be sure, any sort of interlocutory appeal can result in the nullification of proceedings at the trial level; but in the usual case the reviewing court has direct supervisory authority over the trial court, and thus interlocutory appellate determinations can either advance, simplify, or mercifully end the on-going proceedings below. In fact, the "collateral order doctrine" is partly predicated on the assumption that

---

**7.** *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

**8.** The cited passage reads:
   Nonreviewability extends only to the discretionary decision to remand or not to remand a properly removed action, not to whether the bankruptcy court originally had jurisdiction over the matter. *There is no dispute in the instant case that the Bankruptcy Court had jurisdiction to act and the manner in which it acted is not subject to our review.* In *Pacor,* the Third Circuit held that, § 1478(b) notwithstanding, it could review a remand order when the bankruptcy court lacked jurisdiction under § 1471(b) [now § 1334] because the removed proceeding was not "related to"

bankruptcy. In contrast, the instant action involves a decision by the Bankruptcy Court, having jurisdiction and in the exercise of its discretion, to remand the 1979 case.
   *Browning* 743 F.2d at 1076–77 n. 21 (citations omitted; emphasis added).

**9.** Unlike § 1441, § 1452 allows removal from all courts, state, federal and otherwise, except from the Tax Court or from regulatory enforcement proceedings. As a practical matter, however, the bulk of removals are from state courts; and in any case the possibility of extraordinary disruption discussed in the text exists whenever the case has returned to a court outside the direct supervisory authority of the appellate court asked to review the remand order.

allowing certain types of interlocutory appeals will help to resolve cases more efficiently. Appellate review of remand orders, on the other hand, is necessarily inefficient because of its peculiar binary quality: Either the remand is affirmed, in which case the appeal itself was a waste because it had no effect on the on-going state case; or the remand is reversed, in which case progress made in the state court proceedings may be nullified and the parties forced to restart in federal court.[10] We recognize that the Supreme Court has allowed *mandamus* review of remand decisions under § 1447,[11] so an "administrative difficulties" rationale cannot alone sustain our reading of § 1452. But *Pacor* allows *full* review under § 1452 (not mere mandamus) without discussing or, for all the opinion shows, seriously considering problems of judicial administration.

The holding in *Pacor* also creates a strange anomaly between the bankruptcy rule under § 1452 and the general rule under § 1447 as construed in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). In *Thermtron*, the district court had remanded the case because its docket was crowded and injustice to the plaintiff would result from long delay before trial—in other words, the remand was on "equitable" grounds. The statute, however, speaks only of mandatory remands when the district court is without jurisdiction.[12] The Supreme Court held that mandamus was available to reverse a remand order that was "equitable" and not based on jurisdiction as required by § 1447.

Taken together then, the result of *Pacor* and *Thermtron* is this: For bankruptcy removals, only jurisdictional remands and not discretionary ones are reviewable; for all other removals,[13] only discretionary remands and not jurisdictional ones are reviewable. We cannot imagine that Congress actually intended such a perverse asymmetry, nor can we see how it furthers any conceivable congressional goal.

Nor is this anomaly merely unaesthetic; it creates the real possibility of confusion and manipulation. Both § 1441 and § 1452 literally apply to every case removed from state court by the defendant because of a related bankruptcy; what we may term "direct" removal jurisdiction exists under § 1452 and its companion jurisdictional bankruptcy statute § 1334, and "indirect" bankruptcy removal jurisdiction exists under § 1441, which permits removal of any civil action of which the federal district courts would have original jurisdiction, including bankruptcy actions under § 1334. In other words, there is in every bankruptcy case the potential for both "direct" § 1452/§ 1334 removal and "indirect" § 1441/§ 1334 removal. This inherent overlap led the court in *Pacor* to conclude that only § 1452 should apply when jurisdiction is founded on § 1334. That solution is a plausible way to avoid inconsistencies that could result from the simultaneous application of the two removal statutes to bankruptcy cases, but it is inadequate.

What of bankruptcy cases where there is both "direct" § 1452/§ 1334 bankruptcy removal and "direct" § 1441/§ 1331 "federal question" jurisdiction removal; for example, a suit under federal securities law brought in state court against the parent corporation of a debtor? Under the rule of *Pacor* what result?: Can the defendant choose which "direct" removal route to take, thus controlling the possible grounds for remand and the kind of appellate review of the remand orders? Can the dis-

---

**10.** As is noted above, *final* state court judgments would not be affected by a successful appeal of a remand order. There might also be intermediate rulings in the state court prior to final judgment that are final in effect and thus binding as *res judicata* even if the remainder of the case returns to federal court after a successful *Pacor*-style appeal. All this points to a further set of difficulties with the rule in *Pacor*: figuring out what aspects of the state court proceeding could or must be carried back to the renewed proceeding in federal court.

**11.** *See Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) (discussed below).

**12.** *See supra* note 6.

**13.** Except under 28 U.S.C. § 1443; *see supra* note 6.

trict court choose to characterize such a removal as "really" under one set of statutes or the other, thus controlling the nature of appellate jurisdiction over its order? And since the scope of review under each removal statute cancels out the other, can the district court remand under *both* removal statutes, thus negating all review? Part of the problem posed by the first question is, of course, built in to the removal statutes: The statutes may give the defendant room for legitimate strategic use of their discrepancies to limit the discretion of the district court. But the rule of *Pacor* creates a new overlay of incentives for strategic behavior with respect to appellate review; and these include for the first time, as the other questions imply, incentives for the district court to engage in strategic maneuvering. The district court's incentives appear or disappear with the presence or absence of appellate review.

Which leads us to the final problem: *Pacor* enlarges upon a weakness built into the rule of *Thermtron.* As Justice Rehnquist suggested in dissent,[14] after *Thermtron* reviewability of § 1447 remands turns on what the district court *says* it is doing. If the court *says* it is remanding for lack of jurisdiction, the decision—even if flagrantly wrong—is completely unreviewable. If the court *says* something else, review is available. In other words, reviewability turns on incantation, and the district court has absolute discretion to permit or to deny review of its order. *Pacor* imports the same problem into the bankruptcy arena: If the district court *says* "equitable" grounds, no review; if the court is unwise enough to say "no bankruptcy jurisdiction," *full* review (not just mandamus, as in *Thermtron*). Rules of appellate jurisdic-

tion that turn solely on the district courts' recitations of formulae make little sense, and we would not add a new one even were we free to do so.[15]

As it is, our decisions in *In re Compton* and *In re Rayburn* control the outcome of this appeal. In its discussion of former § 1478, *Compton* explicitly noted the distinction between "equitable" and jurisdictional remands urged by Texas Air, holding neither kind reviewable: "Whether the remand order be viewed as one of abstention or as one grounded in a perceived want of *jurisdiction* we are not empowered to review it." 711 F.2d at 627 (emphasis added).[16] The fact that in *Compton* no litigant made and no judge considered the fancy argument advanced in this case does not authorize us to disregard our Court's strong rule that we cannot overrule the prior decision. Nor was the panel that decided *Browning v. Navarro* free to do so.[17] Furthermore, *Rayburn* explicitly applied the rule of *Compton* to the same language in § 1452. The district court had remanded a state-court suit against the sole shareholder of a corporate debtor, "stating both lack of federal *jurisdiction* and abstention as grounds for its action." 781 F.2d at 502 (emphasis added). We held that *Compton*'s reading of former § 1478 should control our reading of the identical language in the post–1984 removal statute § 1452: "We therefore reaffirm the *Compton* ruling and follow it." We do so again today.

### D. Conclusion

By the rule of *In re Compton* and *In re Rayburn* we lack jurisdiction to hear this appeal. Those cases create an absolute bar against appeal from decisions to remand or not under § 1452(b). And we think those

**14.** *Thermtron* 423 U.S. at 357, 96 S.Ct. at 596.

**15.** We do not mean to suggest that federal district courts are prone to manipulate legal doctrine; we as appellate judges know better than any the contrary to be true. The question that we have analyzed is whether rules of appellate jurisdiction that give *incentives* for manipulation are wise, particularly when there seems to be no corresponding benefit other than the fact of review itself.

**16.** When the district court decides to *retain* a case in the face of arguments that it lacks jurisdiction, the decision itself is technically unreviewable; but of course the appellate court reviewing any other aspect of the case must remand for dismissal if the refusal to remand was wrong, *i.e.,* if there is no federal jurisdiction over the case.

**17.** *See supra* note 8 and accompanying text.

decisions correct and prudent despite the carefully reasoned opinion to the contrary in *Pacor, Inc. v. Higgins.* We therefore DISMISS the appeal.

ALVIN B. RUBIN, Circuit Judge, concurring:

While I do not agree fully with the rationale expressed by my brother Gee in Part C of the opinion, I concur in the remainder of the opinion and in the conclusion that *In re Compton,* 711 F.2d 626, 627 (5th Cir. 1983), and *Rayburn Enterprises v. Rayburn,* 781 F.2d 501, 502 (5th Cir.1986) (per curiam) are controlling.