In re CATHEDRAL OF the INCARNATION IN the DIOCESE OF LONG ISLAND, Debtor.

CATHEDRAL OF the INCARNATION IN the DIOCESE OF LONG ISLAND, Debtor–Appellant, Cross–Appellee,

Incorporated Village of Garden City, in the Matter of the Application of the Incorporated Village of Garden City to acquire fee title to the land and improvements thereon at the northwest corner of Stewart and Rockaway Avenues, known as the St. Paul's School site; Official Committee of Unsecured Creditors, Appellants–Cross–Appellees,

v.

GARDEN CITY COMPANY, INC., Appellee–Cross–Appellant,

The Attorney General of the State Of New York; Fleet Bank, and United States Trustee Office, Interested Parties.

Nos. 527, 594 to 596 and 974, Dockets 94–5064, 94–5066, 94–5072, 94–5076 and 95–5026.

United States Court of Appeals, Second Circuit.

Argued Nov. 28, 1995.

Decided July 9, 1996.

Edward J. LoBello, New York City (Thomas L. Kent, Marks & Murase, New York City, of counsel, Anderson Kill Olick & Oshinsky, New York City, on the brief), for Debtor–Appellant–Cross–Appellee Cathedral of the Incarnation and Cross–Appellee Official Committee of Unsecured Creditors.

Peter J. Mastaglio, Garden City, N.Y. (James G. Ryan, Cullen and Dykman, Garden City, N.Y., of counsel), for Appellant Village of Garden City.

F. Judith Hepworth, Uniondale, N.Y. (Dolores Fredrich, Michael J. Healy, Farrell, Fritz, et al., Uniondale, N.Y., of counsel), for Appellee–Cross–Appellant Garden City Company, Inc.

Arthur Steinberg, New York City (Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief), for Interested Parties.

Before OAKES, McLAUGHLIN and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This complex appeal arises from the efforts of the Cathedral of the Incarnation in Garden City, New York (the "Cathedral"), to extricate itself from financial difficulties. In 1993, the Cathedral filed for bankruptcy protection under Chapter 11.

The Cathedral's principal asset, and the subject of this controversy, was a valuable parcel of land (the "Property"), a 48.6 acre tract, which the Cathedral had acquired in the latter part of the Nineteenth Century, pursuant to several deeds made by Mrs. Cornelia M. Stewart, her executor, and her heirs. These deeds created charitable trusts and contained restrictions. The deeds required that the land be used for church purposes, including the operation of a church-related school. They further provided that the Cathedral would hold the property "without power, right, or authority to grant, convey, lease or mortgage the same in any way or manner whatsoever."

The Garden City Company ("GCC"), the appellee, claims to hold a reversionary interest in the Stewart lands, deeded to its predecessor by heirs of Mrs. Stewart.[1]

For many decades the Cathedral operated a boys' and a girls' school on the premises. The two schools were merged in 1990. Because of diminishing enrollment and financial problems, the Cathedral announced in 1991 that it would close the school. The Attorney General of the State of New York thereupon instituted a *cy pres* proceeding against the Cathedral to enforce the charitable trust governing the property, and the New York Supreme Court required the Cathedral to arrange with another educational institution to use a part of the property for school purposes.

Because of the restrictions contained in the Stewart deeds, the Cathedral could not sell or lease any portion of the property as a way of raising money to satisfy its creditors. In 1992, the Cathedral and the Incorporated Village of Garden City (the "Village") devised

---

1. In addition, GCC contends that it holds title to a small portion of the land at issue, which it alleges was never conveyed to the Cathedral.

a plan to satisfy the creditors and solve the Cathedral's financial problems. On December 22, 1992, they negotiated a Memorandum of Understanding ("MOU") under which the Village would seize the Property in an eminent domain proceeding, the Cathedral would agree to accept compensation of $7.25 million (less expenses) payable in full shortly following the conclusion of all appeals from the adjudication of any conflicting claims, and the Cathedral would indemnify the Village in the event of any adverse claim that might cause a loss to the Village. To carry out the terms of the MOU, the Village published notice of its intent to acquire the Property by eminent domain and held a public hearing.

Meanwhile, as noted, (on April 9, 1993) the Cathedral filed for bankruptcy protection. The Cathedral then sought and received from the bankruptcy court an exception from the automatic stay under 11 U.S.C. § 362, to allow the Village to institute the eminent domain proceeding in New York State Supreme Court against the Property, and the proceeding was instituted on October 18, 1993. On October 28, 1993, the bankruptcy court approved a settlement among the Cathedral, its creditors, and the Attorney General (the "Settlement"), under which (i) the Cathedral would remove the condemnation proceeding from the New York court to the bankruptcy court, (ii) any objections or claims relating to the condemnation would be filed in the bankruptcy court, (iii) the condemnation proceeds would be used to satisfy the Cathedral's creditors and to create a fund to satisfy the Attorney General with respect to the Cathedral's charitable trust obligations, and (iv) the bankruptcy court would hear all claims for compensation as a result of the condemnation on November 29, 1993. (Fleet Bank, one of the creditors, had expressed impatience and had agreed to accept a modest discount on its debt if it was paid by December 31, 1993.)

The New York State Supreme Court entered the vesting order in the condemnation proceeding on November 10, 1993, granting title in the Property to the Village. On November 19, GCC filed its claim in the condemnation proceeding in the New York state court, asserting entitlement to $15 million compensation from the Village by reason of the condemnation. Meanwhile, the Cathedral removed the condemnation proceeding on November 16, transferring it to the bankruptcy court. On October 28, 1993, the bankruptcy court had entered an order requiring any creditor of the Cathedral or party in interest who objected to the proposed disposition of its claim "or asserted a claim by reason of the Eminent Domain proceeding," to file a claim in the bankruptcy court by November 26, 1993. In response to this order, GCC, on November 24, filed in bankruptcy court a duplicate claim against the Village for $15 million, as its entitlement resulting from the condemnation of the Property.

On November 29, the bankruptcy court held its hearing on GCC's claim. GCC declared it was not ready to present its evidence and requested an adjournment, which the bankruptcy court denied. At the close of that hearing, the bankruptcy court granted the Cathedral's motion to dismiss GCC's claim filed in the bankruptcy court, and denied GCC's request for a stay. On December 7, the bankruptcy court issued its order dismissing GCC's claim. On December 8, the bankruptcy court denied GCC's motion for abstention and remand to state court. And, on December 30, the bankruptcy court dismissed GCC's earlier claim, which had been filed in the removed state court proceeding, on the ground that it was identical to the previously dismissed claim. The bankruptcy court ordered the Village to pay the condemnation proceeds ($7.2 million, after expenses) to the Cathedral forthwith. The Village had earlier protested the Cathedral's suggestion that the entire sum be paid immediately, which was inconsistent with the MOU, under which the Village was not obligated to pay until the conclusion of all litigation relating to adverse claims. Nonetheless, the Village made no formal application to stay the court's order of immediate payment, and wired the funds on December 31, 1993. The money was promptly disbursed as provided in the Settlement.

GCC appealed the bankruptcy court's various orders to the United States District Court for the Eastern District of New York.

The district court (Arthur D. Spatt, J.) generally sustained GCC's contentions. It found that, because GCC's claim against the Village for compensation resulting from the condemnation was not core to the bankruptcy proceeding, it should have been remanded to state court, and that GCC's due process rights had been violated when the bankruptcy court denied its application for an adjournment and forced it to present evidence on November 29, 1993, solely for the purpose of concluding the disbursements by December 31, 1993, as Fleet insisted. Believing that GCC had also made a claim against the Cathedral, as opposed to the Village, however, the district court ruled that this was a core bankruptcy matter and affirmed the bankruptcy court's dismissal of the claim. Accordingly, the district court vacated the bankruptcy court's rulings (with the exception of the dismissal of GCC's claim *against the Cathedral as debtor*) and remanded the condemnation proceeding to the New York Supreme Court under the mandatory abstention provision of 28 U.S.C. § 1334(c)(2).

The Village feared that, having paid the Cathedral, it might also be held liable to GCC. The Village thus sought an order of disgorgement and restitution, requiring the creditors to return to the Cathedral the payments they had received, and the Cathedral in turn to give back the money it had been paid by the Village, pending the ultimate adjudication of GCC's claim. The district court denied the application.

The Cathedral and its creditors' committee, the Village, and GCC, all appeal from various district court orders.

### Discussion

This is an exceedingly confusing case. In certain respects the rulings of the district court appear to be internally contradictory. First, if—as the district court ruled—the bankruptcy judge violated GCC's due process rights by requiring it to proceed to trial on November 29, 1993, we cannot understand why the court affirmed the bankruptcy court's ruling of December 7, 1993, that GCC "has failed to establish or sustain a *prima facie* case with respect to [its] Claim [to a residual or reversionary interest on the Property]." Second, the district court found, based on principles of mandatory abstention, that GCC's claim against the Village in the condemnation proceeding of an interest in the condemned Property should be remanded to be adjudicated by the state court; we do not understand how that result should be squared with the district court affirmance of the bankruptcy court's December 7, 1993 finding that GCC had no interest in the Property, which could be seen to foreclose relitigation of the same issue in state court. In addition, we think the district court misunderstood the nature of GCC's claim filed on November 24, 1993 in the bankruptcy court. The district court treated this as a claim against the debtor's estate, and as such, obviously core to the bankruptcy proceeding. GCC, however, advanced it as a claim *against the Village*, filed in the bankruptcy court only because the eminent domain proceeding had been removed there and because the bankruptcy court had ordered, on October 28, 1993, that "[a]ny ... party in interest who ... asserts a claim by reason of the Eminent Domain Proceeding relating to the St. Paul's Property," should file a claim with the bankruptcy court no later than November 26, 1993.

We proceed to review the contentions advanced on appeal.

### I. *Appellate Jurisdiction*

■ In response to the appeal of the Village and the Cathedral from the district court's order remanding the eminent domain proceeding to state court, GCC contends that no appeal lies. We agree.

Section 1452(b), Title 28, U.S.Code, provides that the court to which a "claim or cause of action is removed [under § 1452(a) ] may remand such claim or cause of action on any equitable ground," and that "[a]n order ... remanding ... or a decision to not remand, is not reviewable by appeal...." Removal under § 1452(a) is permitted if the district court has jurisdiction under 28 U.S.C. § 1334, which provides jurisdiction in cases under Chapter 11 of the bankruptcy code, and matters "arising under [Chapter] 11, or arising in or related to" such cases. 28 U.S.C. § 1334(a)-(b).

The removal of the condemnation proceeding from the New York state court was pursuant to § 1452(a), because the condemnation was related to the administration of the Cathedral's estate under Chapter 11 of the Bankruptcy Code. Accordingly, under § 1452(b) the condemnation proceeding was subject to remand by the district court "on any equitable ground," and the decision to remand "is not reviewable by appeal." 28 U.S.C. § 1452(b).

Appellants, the Cathedral and the Village, argue that the statute's prohibition of appellate review does not apply to the remand in this case. They note that § 1452(b) bars review where the district court's remand order rests on an "equitable ground." This, they argue, indicates that review is permitted where the district court relies not on an equitable justification, but rather on one *at law.* The district court's decision to remand was based on its conclusion that the condemnation proceeding was not a core bankruptcy proceeding, and was thus subject to mandatory abstention (upon timely motion of a party under 28 U.S.C. § 1334(c)(2) if the case could "be timely adjudicated, in a State forum."). 28 U.S.C. § 1334(c)(2). Characterizing the district court's decision to remand as a *legal* determination, appellants contend it does not come within the definition of a remand "on any equitable ground" under § 1452(b), and is therefore not within the class of remands made unreviewable by that statute.

We do not find appellants' argument persuasive. To accept it, we would have to embrace an uncompelling distinction between "legal" and "equitable" justifications for remand, one that we do not believe Congress intended in drafting the statute. Our view is substantially influenced by the reasoning of Justice Ginsburg's recent concurrence in *Things Remembered, Inc. v. Petrarca,* —— U.S. ——, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). In that case, the Supreme Court considered the appealability under 28 U.S.C. § 1447(d) of a district court order remanding a bankruptcy case for untimely removal. The Court held that § 1447(d) barred review, whether the initial removal had taken place under 28 U.S.C. § 1441(a), the general removal statute, or § 1452(a), the bankruptcy specific removal statute. *Id.* at ——, 116 S.Ct. at 497. Justice Ginsburg, joined by Justice Stevens, wrote separately to explain that § 1452(b) also barred review of the remand—an issue not directly addressed by the majority opinion. Noting that § 1452(b) allows for remands on "any equitable ground," Justice Ginsburg explained:

> The lawmakers chose [those] capacious words ... with no hint whatever that they meant by their word choice to recall pre-merger distinctions between law and equity, and thereby to render reviewable bankruptcy case remand orders based on "law." In legal systems that never separated pleadings and procedure along law/equity lines, and not infrequently in our own long-merged system, "equitable" signals that which is reasonable, fair, or appropriate. . . .
>
>     . . . .
>
> ... A restrictive definition of what is "equitable" could invite wasteful controversy over the reviewability of bankruptcy case remand orders that are not reached by § 1447 and rest on grounds a common-law pleader might type "legal." It would show little respect for the legislature were courts to suppose that the lawmakers meant to enact such an irrational scheme.

*Things Remembered,* —— U.S. at ———— ——, 116 S.Ct. at 499–500 (Ginsburg, J., concurring). Appellants ask us to adopt the distinction that Justice Ginsburg rejected. We decline to do so.

In taking this position, we follow not only a compelling Supreme Court concurrence, but also persuasive rulings of the Seventh and Fifth Circuits. In *Hernandez v. Brakegate, Ltd.,* 942 F.2d 1223 (7th Cir.1991), the Seventh Circuit considered an argument very similar to that advanced by appellants, a claim that the language of § 1452(b) barring appellate review did not cover a remand ordered for the "legal" reason that subject matter jurisdiction was lacking. In a thoughtful opinion, Judge Easterbrook disagreed with this reasoning, noting that "the distinction between law and equity was abolished long ago in federal cases. Nothing in the history of the bankruptcy code suggests

that Congress wanted to resuscitate it." *Id.* at 1226. The Fifth Circuit has also declined to adopt this law/equity distinction in interpreting § 1452(b). *Sykes v. Texas Air Corp.*, 834 F.2d 488, 490–92 (5th Cir.1987). Only the Third Circuit has taken appellants' approach, in a much criticized opinion, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 992–93 (3d Cir.1984). *See Hernandez*, 942 F.2d at 1225; *Sykes*, 834 F.2d at 490; *see also Things Remembered*, ⸺ U.S. at ⸺, 116 S.Ct. at 500 (Ginsburg, J., concurring).

Appellants' position also contravenes the "strong congressional policy against review of remand orders." *Sykes*, 834 F.2d at 490; *see Things Remembered*, ⸺ U.S. at ⸺, 116 S.Ct. at 500 (Ginsburg, J., concurring)(quoting *Sykes*); *Hernandez*, 942 F.2d at 1226 (explaining that prohibiting appellate review of remands reflects Congressional judgment that such review would unnecessarily prolong litigation and increase costs). We agree with the Seventh Circuit that *Pacor* was "clever rather than correct," *Hernandez*, 942 F.2d at 1225, and decline to adopt the law/equity distinction pressed by appellants.

Interlocutory appellate review of remand orders would delay and prolong litigation with little benefit. Because a remanded case can proceed promptly under the supervision of a state court that in most cases unquestionably has jurisdiction, there is little benefit to be obtained from appellate review. The costs and disadvantages of such review, on the other hand, would be substantial. As Judge Easterbrook pointed out in *Hernandez*, state courts receiving a remand that remains subject to appellate review may delay the proceedings while awaiting the result of the appeal, effectively bringing the litigation to a needless standstill. *Id.* at 1226. Section 1452(b) reflects Congress's judgment

that the rare instance of an unlawful remand order does not justify the time and dollar costs of making remands appealable.[2]

Appellants argue further that we should extend our ruling in *S.G. Phillips Constructors, Inc.*, on the reviewability of abstentions under 28 U.S.C. § 1334, to cover remand orders under § 1452(b). *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702 (2d Cir.1995). In *Phillips*, we considered a district court's abstention decision pursuant to § 1334(c)(2), and found that abstention was not warranted. We reviewed the district court's decision despite language in § 1334(c)(2) that appeared to preclude appellate review of abstentions, deeming it appropriate to consider on appeal whether "the statutory requirements prerequisite to mandatory abstention are met." *Phillips*, 45 F.3d at 708.[3] Appellants urge that exercising appellate review in this case on the basis of their legal/equitable distinction is a natural extension of our reasoning in *Phillips*. The "equitable" nature of the remand, appellants suggest, is a statutory prerequisite and is reviewable on appeal.

The holding of *Phillips*, finding limited reviewability in spite of a statutory declaration of nonreviewability, arose under a different statute than the one involved here. In *Phillips* the nonreviewability provision at issue was the one set forth in § 1334 for mandatory abstention rulings. Here the issue arises under the nonreviewability provision of § 1452(b) for remands ordered "on any equitable ground." We are reluctant to extend the *Phillips* ruling to these facts for several reasons.

First, as explained, doing so would require that we adopt an untenable distinction between legal and equitable remands, a position persuasively rejected by the Fifth and Seventh Circuits and in a concurring opinion of the Supreme Court.

2. In related circumstances, Congress has come to the same conclusion. For example, in 28 U.S.C. § 1334, regarding abstentions from hearing a claim "related to a case under title 11 [of the Bankruptcy Code]," Congress stated that "[a]ny decision to abstain or not to abstain [with certain exceptions] is not reviewable by appeal or otherwise...." 28 U.S.C. § 1334(d). Outside the bankruptcy context, the statute covering procedure after most removals makes orders of remand to state courts unreviewable where re-

mand is based on any defect in removal procedure or lack of subject matter jurisdiction. 28 U.S.C. § 1447(c),(d).

3. The Bankruptcy Reform Act of 1994 amended § 1334 by shifting the nonreviewability provision from subsection (c)(2) to subsection (d), and adding a narrow exception to the prohibition on review, as discussed later in this opinion.

Second, as to the statute considered in *Phillips,* abstention decisions under § 1334 fall into two categories—those in non-core cases under § 1334(c)(2) that are made nonreviewable, and other abstention decisions in core cases, under § 1334(c)(1), that are reviewable. *Phillips,* 45 F.3d at 708; *In re Ben Cooper, Inc.,* 924 F.2d 36, 38 (2d Cir.), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). As the *Phillips* court pointed out, in order to determine whether a particular abstention was of the reviewable or nonreviewable kind, the appellate court needed to determine whether the proceeding at issue was core or non-core. *Phillips,* 45 F.3d at 708. Thus, to a limited extent, the court was obligated to review—notwithstanding the statute's apparent assertion of nonreviewability—to see if the dispute fell within the nonreviewable category. Having concluded that the proceeding was core, the *Phillips* court determined that the abstention was not of the nonreviewable sort.

Furthermore, we note that, while *Phillips* was *sub judice,* Congress amended § 1334 to allow appellate review of § 1334(c)(2) determinations where the district court has decided "not to abstain." 28 U.S.C. § 1334(d). The legislative history of the amendment strongly suggests that Congress viewed this change as carving out a narrow exception to a general rule prohibiting appellate review of abstention decisions.[4] It is less clear that the *Phillips* decision would control subsequent disputes arising under the amended statute. This shift makes us still more reluctant to extend *Phillips* in the manner requested by appellants.

■ Because we lack appellate jurisdiction, we dismiss the appeal from the district court's remand of the eminent domain proceeding to state court.[5]

## II. *The Dismissal of GCC's Supposed Bankruptcy Claim*

■ In analyzing the confusing record of the bankruptcy court proceedings, the district court concluded that GCC had made two fundamentally different claims. The first, initially lodged in the state court condemnation proceeding and subsequently removed to bankruptcy court along with the entire condemnation proceeding, was unquestionably a claim against the Village for compensation arising from the seizure of the Property. As noted above, the district court vacated the bankruptcy court's finding that this claim was invalid and remanded it to state court. The second was understood by the district court as a claim by GCC against the debtor's estate, seeking the proceeds the Cathedral would receive from the condemnation of the Property. Because the district court understood this as a claim against the debtor's estate, the district court viewed it as a core claim within the bankruptcy court's jurisdiction and affirmed the bankruptcy court's dismissal of GCC's claim.

As noted above, this action of the district court raises two troubling problems. First is the possibility that the main issue in the remanded case has already been adjudicated. The district court clearly believed it was remanding to state court for a determination

4. The House Committee Report explains that the relevant 1994 amendments were designed to: allow[ ] the full appeal of certain bankruptcy court refusals to abstain in State law legal proceedings.... [This amendment] operates prospectively and applies only to cases filed after the effective date of the Act. Accordingly, it does not make existing orders appealable. Any future decisions not to abstain, if made in cases filed before the effective date of the Act, would also be governed by present law and thus would not be appealable to the Circuit Court of Appeals.
H.R.Rep. No. 103-835, 103d Cong., 2d Sess. (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3345–46 (report accompanying Bankruptcy Reform Act of 1994, Bankruptcy Amendments of 1994).

5. With respect to the district court's order vacating the bankruptcy court's adjudication of GCC's eminent domain claim, we note that this order was based on a finding that the condemnation proceeding was non-core. From this finding, it follows as a matter of law that the bankruptcy court could not enter judgment on this claim because bankruptcy courts have no power to enter judgments in non-core matters. *See* 28 U.S.C. § 157 (providing that as to non-core claims, the bankruptcy court's power is limited to making recommendations to the district court, which reviews the recommendations *de novo* ). In any event, as the matter has been remanded to state court, the order vacating the adjudication is not before us to review.

whether GCC had any rights in the Property. If, by affirming the bankruptcy court's dismissal, the district court had already affirmed a finding that GCC had no such rights, arguably that question would be foreclosed from state court adjudication. Second, since the district court ruled that the bankruptcy court had violated GCC's due process rights by compelling it to proceed on scant notice on November 29, 1993, we do not understand why the district court nonetheless affirmed a finding that might terminate GCC's rights.

We need not resolve these conflicts because we find that the district court misunderstood the nature of GCC's claim. This was not, as the district court supposed, a claim against the bankrupt estate. The claim filed by GCC in the bankruptcy court on November 24, 1993 was a claim against the Village in the removed eminent domain proceeding. It was filed in the bankruptcy court not because it related to a bankruptcy matter, but only because the bankruptcy court had become the eminent domain court following the removal and had required (by order of October 28, 1993) the resubmission of eminent domain claims. GCC made abundantly clear that its claim was against the Village in the condemnation proceeding, was a duplicate of the claim it had previously filed in the state court, and was filed only because of the bankruptcy court's order.

Under the circumstances, we think the district court erred in construing GCC's claim as including a core claim against the debtor. No such claim was advanced by GCC. Accordingly, the district court erred in its conclusion that the bankruptcy court had ruled on a core claim advanced by GCC against the debtor in the bankruptcy proceeding, and in affirming that ruling. The only ruling made by the bankruptcy court on the merits of GCC's claim was on the only claim GCC advanced—a claim against the Village in the condemnation proceeding, that being the claim remanded by the district court to state court. We therefore vacate the district court's ruling to the extent that it purports to

affirm the bankruptcy court's adjudication of a claim brought by GCC against the Cathedral's estate.

### III. *Village's Motion for Restitution*

■ After the district court issued its order vacating the bankruptcy court's adjudication of the eminent domain claim and remanding the proceeding to state court, the Village moved for reconsideration. The Village noted that on December 31, 1993 it transferred $7.2 million to the Cathedral in compensation for the property at issue, pursuant to a bankruptcy court order that the money be paid "forthwith." The Village argued that when the district court vacated the bankruptcy court's adjudication of the eminent domain proceeding, it also should have vacated the order that followed from that adjudication requiring the Village to compensate the Cathedral. The Village claimed that principles of restitution required the return of the funds it had paid to the Cathedral. Because the Cathedral would otherwise be incapable of making reimbursement, the Village also sought an order requiring the Cathedral's creditors to return the funds distributed to them.[6]

The district court ruled against the Village, noting that the Village might have waived the issue by failing to raise it in its initial briefs and that the Village had failed to demand a stay when the bankruptcy court ordered it to pay forthwith.

The district court was understandably reluctant to unwind the Settlement payments, causing inevitable dislocation, while the future of GCC's claim remained uncertain. If GCC ultimately fails to establish its claim, such dislocation would have been for naught.

Under these provisional circumstances, we believe the district court's denial of the Village's application was a proper exercise of its discretion. This ruling does not foreclose return to the question, upon a proper application by the Village, in the event GCC's claim against the Village is sustained. If GCC prevails in state court, the bankruptcy

---

**6.** The Village does not seek the return to Cathedral of approximately $120,000 that has been disbursed to various unsecured creditors.

court would need to decide whether equitable principles, such as the doctrine of equitable mootness, apply. *Compare In re Chateaugay, Corp.*, 10 F.3d 944, 952–53 (2d Cir.1993) *with Atlantic Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 309–10, 55 S.Ct. 713, 716–17, 79 L.Ed. 1451 (1935); *Restatement (First) of Restitution* § 74 (1937). The bankruptcy court (which should not have required the Village to pay forthwith, especially in view of the Village's rights under the MOU) should hold the bankruptcy case open pending adjudication of GCC's claim in the state courts to allow the Village to seek an unwinding of the Settlement payments in the event GCC prevails. The district court should so direct.

### Conclusion

█ We have considered the parties' other arguments, and find them to be without merit.[7] For the reasons stated above, (i) the appeal from the district court's order remanding the eminent domain proceeding to state court is dismissed, (ii) the district court's decision affirming the bankruptcy court's adjudication of the duplicate claim filed by GCC in the bankruptcy proceeding is vacated, and (iii) the district court's denial of the Village's application for restitution pending resolution of GCC's claim is affirmed.

---

**7.** In particular, appellants argue that the district court erred by accepting jurisdiction of this case because it was moot under Article III or the equitable principles applied in bankruptcy appeals, *see In re Best Prods. Co.*, 68 F.3d 26, 29–30 (2d Cir.1995); *In re Chateaugay Corp.*, 10 F.3d at 952–53. The district court had the power to effect some relief, and thus the case was not moot in the Article III sense. *See Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992)(case is moot under Article III when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party") (citation omitted). As for the question of the "equitable mootness" of GCC's claim in the eminent domain proceeding, the issue is not before us because that has been remanded to state court by a non-appealable order.